The last case is 24-1025 Hernandez v. Norton. May I proceed? Thank you, Your Honors. Good morning. May it please the Court, my name is Kevin Flesch. I'm representing Joel Hernandez in this appeal. In preparing for the oral argument, I had time to contemplate what the Court had to decide here. It seems that the question is whether or not an officer in this case, with the facts presented, had the constitutional protection to use lethal force. To question a member of the community. What we know about the contact and what the officer knew of prior to that contact is that an officer had believed that Mr. Hernandez had been speeding and had expired plates on his vehicle. The officer then did a U-turn and started to attempt to stop Mr. Hernandez for the traffic citations, but he had lost sight of them. At that point, Mr. Hernandez had parked his vehicle in an industrial park on the outside of Kiowa. Kiowa is a small town in eastern Colorado, I don't know if you know where it is or what it's like, but the industrial park is, I would say, not necessarily in a high crime area or one that officers would expect any sort of felony activity to be going on. In this particular case, the officers had no information other than what I've just given you when they started to try to contact Mr. Hernandez. Do you agree that the shooting was basically accidental? No. Okay. And I'll explain why, because I think the way that the officer was searching the area, I understand that he was taking the weapon out of his holster and then at a low and ready, but that's not what he did when he was looking underneath this tarp just beforehand. He had the weapon pointed at the tarp, and he must have had his finger inside the trigger guard. The Glock didn't have an external safety, and so at that point, I think he was reckless in the way that he was searching the area. So not purposeful, but reckless. Yes. If he had only had it low and ready and not had his finger in the trigger guard, then we wouldn't have had this situation when we were startled by Mr. Hernandez underneath the tarp. Was it unreasonable? Objectively unreasonable in this circumstance. If you pull the tarp up on somebody with a gun, you kind of wish that you had had your firearm on them, wouldn't you? Well, yes and no. I mean, I understand what the court is saying relating to what ifs, but there was no indication that this individual was that person.  I'm sorry? He fled. He did, but he had the right to. He didn't know that the police were chasing him. He had parked his car, and he had locked it. There's no suggestion that he abandoned the vehicle there. And when they did the search relating to whether or not the vehicle was stolen, it came up clear. It is strange. I'm not disagreeing with you, but I think that the court has to consider whether it was objectively reasonable for the officer to be clearing this area in the manner that they did. Yeah, I mean, we've got to look at it, don't we, from the standpoint of a reasonable officer, and you pull up in the parking lot where someone you were trying to chase down for speeding was, and you find out that their truck's locked, and someone says, yeah, that guy took off. He ran off, and- And he might be a customer. Well, I'd like customers like him who are so excited to shop that they're going to run over to my stuff. And that's why I was saying in my contemplation of this argument, that's really what we're talking about, is we're talking about whether or not officers in this sort of circumstance have the right to have their gun at the ready. Now, if Mr. Hernandez would have stayed in his vehicle, they wouldn't have had the right to approach him with guns drawn. Well, you'd agree with me, wouldn't you, that under the facts as we know them, the cops are not going to view him as an excited shopper, anxious to get out and see what's in the park. I would agree. When someone flees to them, it's a sign that the person is worried about being apprehended. Potentially, but that doesn't mean they have to use lethal force to apprehend them. I understand, let's take it step by step.  And so it wouldn't be unreasonable for an officer if someone said, yeah, that guy jumped out of his truck, locked it, and took off that way, for the officer to believe that the person was fleeing. If that person knew the mindset of the person that was fleeing, knew that the officers were following them, yes, I would say that there would be closer. Well, they don't know, I mean, they can't know your client's mindset. All they know is objectively someone jumped out of their truck and took off. But that's not against the law. I didn't say it was. Okay. It's just a fact. And that was my point in contemplating what took place here, as to whether or not the officer should be allowed to do this sort of activity, to just talk to someone. Because that's all that they were really doing at that point. Right. Well, I mean, they found him hiding under a tarp. Yeah. That's odd, isn't it? It is odd.  Yeah. To an officer, that might seem like they have somebody who's worried about apprehension. At the same time, the officer is pointing a gun at him with his finger on the trigger. That's the problem that we see with this case, that it wasn't a mere accident. I could understand if- But there are other facts, too. The officer was shouting out for the person to make themselves known. So, Mr. Hernandez says that all he heard was Spanish. He didn't hear any English speaking relating to that. So, there's a dispute of fact relating to whether or not he shouted that out or not. Well, you don't know either way. We don't. It's a dispute of fact. Yeah. Well, we know the officer says that, but your client's not saying he didn't say it. He said all he heard was Spanish. I don't have any- Maybe he didn't hear the officer. I didn't hear- That's true. Or maybe the officer didn't say it. Well, that would be a credibility issue, I guess. And we didn't- We never got to that because the case was dismissed. Well, let me- So, what if the officer was peeking up- And this may seem a little far afield to you, but I have reason for asking it. What if the officer was peeking up under the tarp, had his gun pointed there, and one of his partners came up behind him and startled him, and he accidentally discharged the gun? Still the same analysis. Same analysis. Okay. Shouldn't have the gun pointed at an individual unless there's some reason that there's some provocation relating to lethal force, or there's some other indication that the person is meaning direct harm to the officer. Or that they're desperate and in fear of apprehension. But that doesn't give them the right to apprehend them with lethal force. Well, I'm not saying it gives them the right to shoot him, but it might have put them on the defensive to where they feel like they need to defend themselves, if possibly. And I can understand if we were talking factually about a gun that maybe had an external safety on it, or some mechanism to be safe so that if you are startled, that you don't immediately shoot someone. But that's not what this situation is. This situation is a gun that you have your finger on the trigger- Are you making the point that officers carrying a firearm with no external safety are basically being reckless? I'm making the argument that under that circumstance, they have to be very careful, and they are trained relating to where their position of their finger is on that gun whenever they're involved with the public. As you learn in basic hunter safety, you point a gun at someone, you're assuming that they're going to shoot you with it. It's the same sort of situation here, except the officer has his finger on the trigger. There's no other way that this sort of thing wouldn't happen if someone were startled. What's the clearly established case you're relying on? There isn't one. Other than the fact that the analysis relating to lethal forces is used in this case. And that's what the district court said, is that there had to be a specific case that's directly on point. Now, there's other cases relating to officers using lethal force relating to speaking with individuals that are not causing them any harm, or it looks like there's lethal force being brought against the officer. And I think the standard would be relating to that, that the officers understand that in a traffic situation, when you're pulling someone over, you don't use lethal force to talk to someone in a traffic stop, or in a misdemeanor. There's other cases relating to those situations. This case is just really unusual in the fact pattern. Do I have it correct, the one conduct piece that you say was objectively unreasonable was having his finger on the trigger? Yes. Everything else is good? No, I would still say that the pulling the weapon out and using it in this fashion, in the sense of low and ready, would still be objectively unreasonable under these circumstances. With a tarp? Well, they didn't know what, there was no, there was no criminal activity that was going on. But we do look at this from the perspective of the officer, right? And if you're the officer, and what you have seen has happened, could you not reasonably think that when you're dealing with your own life, maybe this is someone who is absconded, maybe this is someone with a warrant who obviously doesn't want to get caught, maybe I've got the worst person in the world here, I'd better be really careful. If that's the case, then you have backup. Then you bring in backup, and you believe that the individual is in this relatively small area, and then you search the area in a more systematic way, with more backup, and you do it. I think in this particular case, what they were doing, is they had an individual that may have had a traffic stop that ran from that, but they still don't know. They do have contact with another member of the community that says the person may be a customer of theirs. I understand the excited customer argument, but it's still what they have. So your question is, in this particular case, is it always presumed reasonable for an officer to have his gun drawn to speak with a member of the community? And I think that that's not reasonable. I don't know if this is true, I guess probably a majority of officer shootings or where officers get shot are during routine traffic stops, right? Absolutely. Absolutely, Judge. And that's some of the analysis that I was looking at, is that, so we've got an individual who, if he had been stopped and stayed unseen, they wouldn't have been able to pull their guns on him. So what changes, I guess, in the analysis with regard to the officer's safety, or a reasonable officer, and their expectations when they go out and search, and whether or not they should be able to use their guns, unholster their guns, while doing that search. And that's what we're saying was the predicate for, we believe, the reckless act of having his finger on the trigger. Okay, just so we're clear on what's reckless and what's not being contended as being reckless, we have the finger on the trigger is reckless. Yes. And how about having the gun drawn, is that reckless? I don't think that's reckless. Okay. Are we just going to call that negligent? Or is it all right? Well, I don't think it's negligent. I think that it's probably, I think the analysis then is whether or not drawing the weapon in that circumstance is subjectively unreasonable for qualified immunity. Because I don't know if the negligence discussion really helps us in any way relating to the qualified immunity issues. And having the gun drawn by itself doesn't cause the situation here. It's that the finger is on the trigger. No one is alleging that the weapon just sort of went off on its own. I think the facts are pretty clear that it was because he had the weapon drawn and he had his finger on the trigger. Oh yeah, I was not under the impression that it discharged without him pulling the trigger. It didn't come up in this particular case, but there is some anecdotal evidence out there that these glocks sometimes spontaneously go off. But that's not the case here. I'll keep that in mind. With that, I don't have any other comments. Thank you, Your Honor. Thank you. Good morning and may it please the court. My name is Ashley Hernandez-Schlegel and I represent Sgt. Michael Sklisky, Sheriff Tim Norton in his official capacity and the Elbert County Sheriff's Office with respect to this matter. You've heard that this case involves a Fourth Amendment claim against Sgt. Sklisky and there seems to be a two-pronged part to that claim. One, was Sgt. Sklisky's drawing of his weapon in search for this fleeing individual who was seen speeding reasonable or was it reckless in some way? And was the discharge of the weapon that, based on the facts of the complaint, can only be seen as accidental or incidental to not having a safety mechanism on the weapon more than negligent, right? Something that could be cognizable under 1983. The other part of this case and what Mr. Flesch clearly admitted is there's no clearly established law. So what the district court found, not analyzing the constitutional violation or whether one occurred, was that there is no clearly established law. And so because Sgt. Sklisky made a qualified immunity argument, the district court found it appropriate to just analyze that prong of the qualified immunity analysis. And we hear today that there is no clearly established law and so Sgt. Sklisky is entitled to qualified immunity. I would also note that the cases that Mr. Hernandez did cite in his brief are clearly distinguishable. I think the court can see that on its face. There's three specific cases that were cited. None of them are on point or even close to the facts of this case. And so there is no clearly established law that Sgt. Sklisky would have been on notice of that his actions in this case would have been a clear violation of Mr. Hernandez's constitutional rights. We also heard Mr. Flesch discuss some of the facts that are alleged in the complaint. And obviously we're constrained to the four corners of the complaint in this case. And the district court judge did decide to maintain the four corners and not rule on any other factual information that may have been impliedly part of the complaint. And what we know from those factual allegations with respect to Sgt. Sklisky's actions was that one, he knew that this individual was speeding 17 miles over the speed limit. So not an insubstantial amount of speeding. That there was no plates and that the registration was expired. He also knew at the time that this individual fled or they had information that he may have fled. Which your honors have noticed is a strange thing to have done if you were not potentially engaged in some nefarious conduct. So that was what Sgt. Sklisky had to work with. He did not know whether this individual was armed. He didn't know what his intentions were, etc. So he reasonably pulled out his weapon. Now there are no allegations that say that a weapon of this sort without a safety mechanism is automatically a reckless kind of conduct. There's no allegations that certain law enforcement officers have safety mechanisms, certain don't. And those that don't have been found, that there's some kind of issue with that. There's no allegations of that in this complaint. Isn't it odd to investigate a completed traffic misdemeanor with the level of vigor that occurred here? I think that based on what Sgt. Sklisky knew at the time and the fact that he's in this industrial complex where someone could be hidden and ambush him. He didn't know whether this individual was armed and he really had no idea what his intentions were in fleeing from the police. By that time, though, he'd already checked the VIN and found out that it wasn't a stolen vehicle. And so what he had was someone speeding with no plates. And then he decided to put himself in the position of potentially being in harm's way by taking a really aggressive approach to investigating this completed misdemeanor. Well, so the aggressive approach being looking for this individual who may have fled in a hidden location where he's uncertain if that individual is armed. There's no allegation in this complaint that the person just fled a very short distance where he might be taking shots at the officer, is there? There's no belief that that was occurring? No, no, Your Honor. I mean, so this was a pretty extensive search of the industrial park to find him? Yes. Well, at least that's what it seems like based on what we know currently is that this search, there had been an initial search done. And then even after that, they went back to start to look for him again. And I would note that the Tenth Circuit has decided that, you know, even in a routine traffic stop, officers may, if they feel it's necessary to protect themselves, draw their weapons. Well, this is a little different, though, because this isn't a situation where the officer walked up to the car. This is a situation where the officer walked up to the car and there was nobody in it. And he did some investigation that didn't turn up anything suspicious before he went out into the industrial park in search of the person who left the car. Well, I would disagree slightly that there wasn't anything suspicious. Other than the running away. Well, and the fact that the truck didn't have plates and it was in expired registration. So there were indications of concern, right? There was suspicion here. And I think that that was then highlighted by the fact that he fled or could have fled in the officer's mind. And so having your gun drawn in such a circumstance, especially you're walking up to a vehicle, a truck bed with a tarp over it. You pull the tarp up. You don't know what's under there. There's no allegation in here that says Sergeant Sklisky knew he was under the tarp and pointed his gun at him because he knew he was there. No, he pulled up the tarp pointing his gun in the general area because he's clearing the area. Did he also have his light on? He did. His gun did have a flashlight on it and he was using that to clear the areas where he couldn't see. Closing up on Sergeant Sklisky, I think it's clear. There's just no constitutional violation here. At most, we have a negligent action, and that's just not actionable under Section 1983. And even if it were, like the district court found, there is no clearly established law here where Sergeant Sklisky would have been put on notice that his conduct was unconstitutional. Mr. Flesch didn't really get to the Monell liability argument here, but the district court did find that there was insufficient allegations that could not state a claim against Elbert County. Sheriff's Officer Tim Norton, Sheriff Norton in his official capacity. Merely alleging that someone, that the training was deficient or some unknown vague policy exists that Sergeant Sklisky violated is insufficient to show liability with respect to the county or Sheriff Norton in his official capacity in this case. And we would request that the court uphold and affirm the district court's decision. I have plenty of time, so if the court would like to ask any additional questions, I'm happy to hear them. Thank you. You may cede your time. Yes. Thank you. And Mr. Flesch, you had some rebuttal if you care for it. I don't. Okay. Thank you, counsel. Counsel excused and the case is submitted. And we are in recess until further notice. January. December. December. Yes.